IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: : | |
| : | No. 4-15-04464 |
| ANDREW L. COLEMAN, dba COLEMAN'S : | |
| ASPHALT, OSCEOLA MILLS CARWASH, : | |
| And SHIRLEY L. COLEMAN, : | |
|     Debtors : | |
| : | Chapter 11 |
| JOHN P. NEBLETT, TRUSTEE, : | |
|     Movant : | |
|     VS. : | |
| : | Motion To Convert |
| ANDREW L. COLEMAN, dba COLEMAN'S : | |
| ASPHALT, OSCEOLA MILLS CARWASH, : | |
| And SHIRLEY L. COLEMAN, : | |
|     Respondents : | |

ANSWER OF DEBTORS ANDREW L. COLEMAN AND SHIRLEY L. COLEMAN
TO TRUSTEE'S MOTION TO CONVERT FROM CHAPTER 11 TO CHAPTER 7

AND NOW COME, Andrew L. Coleman and Shirley L. Coleman, Debtors-in-Possession herein, by their attorneys, the law firm of Stover, McGlaughlin, Gerace, Weyandt & McCormick, P.C., and respectfully respond as follows:

1. Admitted.

2. Admitted.

3. Denied as stated. The Debtors have maintained separate residences since 2009.

4. Denied as stated. Debtor Andrew Coleman (Andrew) has since proposed to SEDA-COG that he purchase his hunting camp, which is currently in joint names, from the bankruptcy estate for

the sum of $140,000. The proposed purchase price was based upon his 2015 appraisal of his hunting camp. Andrew anticipates receiving funds to purchase his hunting camp from his mother Anna Sunman. Debtor Shirley Coleman (Shirley) has since proposed to SEDA-COG that she purchase her home, which is currently in joint names, for the sum of $137,500. The proposed purchase price was based upon an average of her 2015 appraisal and SEDA-COG's appraisal of her home. Shirley anticipates receiving funds to purchase her home from a joint loan with her daughter Natalie Coleman.

5. Denied in part. At the commencement of the case, Shirley had no cash on hand. This was accurately stated in line 1 of Schedule B. At the commencement of the case, Andrew had approximately $80.000 of cash on hand. This was not accurately stated in line 1 of Schedule B.

6. Denied as stated. The term "cash on hand" with respect to line 1 of Schedule B (actual cash) does not include the balances in the Debtors' bank accounts. Rather, the balances in the Debtors' bank accounts are listed in line 2 of Schedule B. The term "cash on hand" with respect to the monthly operating reports includes both actual cash on hand and balances in the Debtors' bank accounts (MOR cash). Line 2 of Schedule B listed a total balance of $5,400 in Andrew's bank accounts.

7. Denied in part. Shirley's MOR cash was accurately stated in each monthly report. Andrew's MOR cash was not accurately stated until December 20, 2016, when the monthly operating reports were amended. Shirley had no knowledge that Andrew's MOR cash was not accurately stated.

8. Denied as stated. At the commencement of the case, Andrew had approximately $89,000 in MOR cash, of which approximately $9,000 were in his bank accounts and approximately $80,000 were in actual cash. Through August 31, 2016, through profits from his seasonally sensitive asphalt paving business, Andrew increased this sum to approximately $196,000 in MOR cash, of which approximately $61,000 were in his bank account and $135,000 were in actual cash. Prior to December 20, 2016, Andrew reported the balances in his bank account on the monthly operating reports. On December 20, 2016, Andrew amended his monthly operating reports to include both his actual cash and the balances in his bank account.

9. Denied as stated. The theft was from Andrea Rafferty's 1968 Chevrolet Camaro. Andrea Rafferty is the Debtor's youngest daughter.

10. Denied as stated. On December 20, 2016, Andrew amended his September 2016 monthly report to report the theft.

11. Denied as stated. Debtor's attorney explained to Andrew the possibility of criminal liability and penalties and his duty of candor to the tribunal. Debtor's attorney also presented

Andrew with the opportunity of obtaining separate criminal defense counsel who may provide him with different advice which he may then prefer to follow. Andrew chose not to seek alternate counsel. Rather, he chose to amend his monthly operating reports and thereby disclose his underreported cash.

12. Denied as stated. On December 20, 2016, Andrew amended his monthly operating reports to include both his actual cash and the balances in his bank account. Previously, Andrew reported only the balances in his bank account on the monthly operating reports.

13. Denied as stated. Since the appointment of the Trustee, Andrew has expressed his willingness to cooperate with the Trustee in his investigation of the financial affairs of the bankruptcy estate. In fact, to date, Andrew has cooperated with the Trustee, has responded to the Trustee's requests within a reasonable amount of time, and is unaware of any unsatisfied demands or any complaints about his conduct from the Trustee since his appointment. Andrew has turned over all cash and bank accounts to the Trustee but understands that further investigations will be necessary to confirm this.

14. Admitted.

15. Denied as stated. Andrew admits to the statements made in this Answer.

16. Denied as stated. Andrew started working in his father's asphalt-paving business in the 1960s when he was thirteen

years old. After his father's death, he started his own paving business in 1993 and had three employees. In 2007, he and James Burns started a bowling alley, for which they borrowed approximately $2,000,000 from two lenders, and pledged their homes and hunting camps as collateral for the SEDA-COG loan, which was also secured by a junior lien on the business assets. Andrew and Shirley separated in 2009. In 2015, due to bad management and a dispute among the investors, the business failed, and the assets were foreclosed or repossessed. Andrew and Shirley filed the above-captioned Chapter 11 case to redeem their home, which Shirley is still using as her residence, and their hunting camp, which Andrew is using as his residence, from the SEDA-COG loan. At age 61, having lost the bowling alley, and nearing retirement from his asphalt-paving business, Andrew was seeking to prevent his wife and himself from losing their homes and their futures to his imprudent decision to invest in the bowling alley. Andrew underreported his actual cash in Schedule B, as well as his business income in the monthly operating reports, which he was hoping to use to help him save his and his wife's homes. Andrew regrets his actions and understands that he will be facing a probable objection to his discharge and possible criminal prosecution. Andrew and Shirley were divorced in 2016. Andrew stopped his asphalt paving business on January

1, 2017.  The Trustee has taken charge of the Debtors' non-exempt cash and assets.

17. Denied as stated.  Debtor's counsel had no knowledge that Andrew's actual cash, MOR cash, and business income were being underreported until he discussed James Burns' objection to the original disclosure statement with Andrew.

18. Denied as stated.  Shirley had no knowledge that Andrew's actual cash, MOR cash, and business income were being underreported until she received a copy of James Burns' objection to the original disclosure statement and discussed it with Andrew and her counsel.

19. Admitted.

20. Admitted.

21. Paragraphs 1 through 20 are incorporated herein by reference.

22. Denied as stated.  The above-captioned case should not be converted to Chapter 7 until Shirley and Andrew have had one last opportunity to redeem their residences from SEDA-COG.  As to the Trustee's points, the Debtors respond as follows:

    a. It is admitted that there was a substantial loss to the bankruptcy estate which occurred prior to the Trustee's appointment.  However, since his appointment, the Trustee has taken charge of the assets of the bankruptcy estate and has stopped any further loss from occurring.

    b. Andrew proposed to SEDA-COG that he purchase his hunting camp, which is currently in joint names, from the

bankruptcy estate for the sum of $140,000. The proposed purchase price was based upon his 2015 appraisal of his hunting camp. Shirley has proposed to SEDA-COG that she purchase her home, which is currently in joint names, for the sum of $137,500. The proposed purchase price was based upon an average of her 2015 appraisal and SEDA-COG's appraisal of her home. SEDA-COG is currently entertaining both proposals.

c. It is admitted that there was gross mismanagement of the bankruptcy estate which occurred prior to the Trustee's appointment. However, shortly before the Trustee's appointment, Andrew amended his monthly operating reports and closed his asphalt-paving business.

d. The cash was never collateralized.

e. It is admitted that assets were underreported in Schedule B and that assets and income were underreported in the monthly operating reports. However, shortly before the Trustee's appointment, Andrew amended his monthly operating reports and closed his asphalt-paving business. The Debtors believe and therefore respond that there has been no failure to follow the rules since the Trustee's appointment. Certainly, the Debtors believe and therefore respond that Trustee has not made the Debtors aware of any further failure to follow the rules since his appointment.

    f.    The Debtors are unaware of any request for information by the United States Trustee which they did not timely provide.

23. Denied as stated. Chapter 11 does not contain any statutory provision that provides for the dismissal of a case for bad faith. Although there is a good-faith requirement for the filing of a Chapter 11 Plan, the Debtors believe and therefore respond that their amended Chapter 11 plan and amended Disclosure Statement were filed in good faith.

24. Denied as stated. The causes asserted in paragraph 22 justified the motion to appoint a Chapter 11 Trustee, which the Debtors did not oppose and which the Court granted. The Trustee has since succeeded in correcting every cause which justified his own appointment. The Debtors respectfully request that the above-captioned case remain in Chapter 11 until Shirley and Andrew have had one last opportunity to redeem their residences from SEDA-COG.

25. Denied as stated. The Debtors filed this Chapter 11 case in order to save their homes from the mistakes surrounding an imprudent investment decision.

26. Denied as stated. SEDA-COG has advised the Debtors that they will seriously consider any reasonable offers to redeem their homes.

WHEREFORE, Andrew L. Coleman and Shirley L. Coleman, Debtors-in-Possession herein, respectfully request that the Motion of the Trustee be denied, and for such other and further relief as is equitable and just.

                                     Respectfully submitted,

                                     STOVER, McGLAUGHLIN, GERACE, WEYANDT & McCORMICK, P.C.

Dated: *8/16/17*                        BY: */s/ Donald M. Hahn*
                                               Donald M. Hahn, Esquire
                                               122 East High Street
                                             P. O. Box 209
                                             Bellefonte, PA 16823
                                             (814) 355-8235
                                             Attorney for Debtors
                                             PA Bar ID #66398

dextend.wp

I, Andrew L. Coleman, Debtor herein, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated:_____                    _/s/ *Andrew L. Coleman*_____
                                       Andrew L. Coleman


I, Shirley L. Coleman, Debtor herein, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated:_____                    _/s/ *Shirley L. Coleman*_____
                                       Shirley L. Coleman

CERTIFICATE OF SERVICE

I hereby certify that I am this day serving the foregoing document upon the person(s) and in the manner indicated below:

<u>Service by ECF Notice as Follows:</u>

    John Neblett, Esquire
    Chapter 11 Trustee

DATED this _16th ____ day of _August_____, A.D., 20_17.

                                         _/s/ Donald M. Hahn_____